**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION**

CASE NO.

**MARK A. TURNER**

    **Plaintiff,**

18 - 2 9 7 2 6 CA 30

1411 Se 26th Ave.
Homestead, Florida 33035

vs.

**ORIGINAL
FILED
SEP 04 2018
HARVEY RUVIN
CLERK**

**CHARTER SCHOOLS USA, INC.,**

    **Defendants.**

800 Corporate Drive
Suite 700
Fort Lauderdale, Florida 33334

**HOMESTEAD POLICE, DEPARTMENT**
45 Nw 1St Ave. Homestead, Florida 33035

    **Defendants.**

**DEFAMATION, SLANDER, LIBEL, MALICIOUS PROSECUTION AND
FALSE IMPRISONMENT**
        **(JURY DEMAND (ENDORSED HEREIN)**

**PRO-SE LITIGANT
MARK A. TURNER**
Plaintiff,
1411 Se 26th Ave.
Homestead, Florida 33035

Ph. 330-501-0352
Markanthony37@sbcglobal.net

Date: September 1, 2018
Signature ----- *Mark A Turner*

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, MARK A. TURNER, by and through his undersigned counsel and pursuant to the Florida Rules of Civil Procedure, sues Defendant, CHARTER SCHOOLS USA, INC., And the Homestead Police Department alleges:

## FACTS COMMON TO ALL ACCOUNTS

1. This is an action. for damages in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), exclusive of interest, court costs, and attorney's fees.

2. At all times hereto material, Plaintiff, MARK A. TURNER, was sui juris and a resident of the State of Florida.

3. At all times material hereto, Defendant, CHARTER SCHOOLS USA, INC., Was a foreign-owned corporation authorized to do and actively conducting business in Miami-Dade County, Florida. At all times The HOMESTEAD POLICE DEPARTMENT were a state authorized law enforcement agency.

4. At all times material hereto, Defendant, CHARTER SCHOOLS USA, INC., Owned, operated, and otherwise controlled at the Keys Gate Charter School located at 200 SE 28th Avenue, Homestead, Florida 33035.

5. On or about September 23, 2016, at approximately 8:30 a.m., the Plaintiff arrived at Keys Gate Charter School to drop-off his daughter for class.

6. After doing so, Plaintiff walked to the administration building to attempt to resolve a previous dispute concerning the Keys Gate Chatter School student drop-off / pick-up policy.

7. Upon arriving to the reception area inside the administration building, Plaintiff

1

was immediately confronted by Defendant's employee, "Rodney Hull "and was thereafter summoned to a small room located in the back of the building (secretly confined) where the two men were joined by an on-campus police officer," Officer David Duckworth. "

8. Immediately after Plaintiff was corralled into the room to discuss the student's drop-off / pick-up policy, Officer Duckworth and: Mr. Hull closed the door to the room and effectively blocked Plaintiff's exit from the room for the next 10 - 15 minutes.

9. Officer Duckworth and Mr. Hull then proceeded to interrogate Plaintiff about his position on the student drop-off of the pick-up policy before advising Plaintiff that he was being served with what the men described as to "trespass warrant," which Keys Gate Charter School instructed Officer Duckworth and Mr. Hull to serve on Plaintiff. **(see EXHIBIT-A, Keys Gate Charter School (official notification of trespass)**

10. The aforesaid "warrant" prohibited Plaintiff from traveling to the premises of Keys Gate Charter School, but not from any of the adjoining areas or parking lots.

11. Understandably shaken, Plaintiff then requested to leave the room and to retrieve and remove his daughter from the class and from the school permanently so he could return home.

12. Officer Duckworth thereafter accompanied Plaintiff from the administration building at the direction of Defendant's staff and continued the discussion concerning the issuance of the "trespass warrant" with Plaintiff in front entrance of the school's administration building.

13. During the course of the discussion, Officer Duckworth advised Plaintiff that Defendant's employee, Vice Principal "Thermes", had repeatedly made previous statements to other staff members at Keys gate Charter School that the Plaintiff was

"disruptive", "violent" and a "threat" to students at the school and that he should not be allowed on campus.

14. Dismayed by the implication of these "reckless and careless" false character attacks based on spite, vengeance and bad motives" , the Plaintiff requested and demanded that Officer Duckworth retrieve his daughter from class so that the Plaintiff and his daughter could leave the school premises and remove his child from the school permanently, in compliance with the Defendant's "trespass wan-ant", Officer Duckworth consented to the Plaintiffs request and stated that "he would promptly return with the Plaintiffs daughter" .

15. After patiently waiting in a "stationary position" for approximately 40 minutes in the entrance and front of the school administrative building, the Plaintiff attempted  to politely asked Officer Duckworth, "how much longer it would take to get his daughter"? Officer Duckworth became belligerent and in malice, in utter contempt stated "you get your ass back to your car I am going to be a witness against you that you are a trouble maker!" I retorted "that we were both under and in the direction of the video surveillance camera and that my civil conduct, his combative behavior and berating speech were captured on video".

16. Officer Duckworth became angry, hostile and outraged! and in a mean spirit of contempt and rage ordered Plaintiff to his police car, handcuffing him in front of Keys Gate Charter School, and effectively placing Plaintiff under arrest at Defendant's behest. **(see EXHIBI-B POLICE COMPLAINT/ARREST AFFIDAVIT, Officer Duckworth).**

17. Plaintiff was thereafter forced into the back of Officer Duckworth's police car

and transported to the local jail where he was booked. Plaintiff spent the next approximately thirty-three (33) hours in a holding cell before he was ultimately arraigned on trespass charges. At the arraignment, all charges against Plaintiff were dropped by the prosecutor, officer Duckworth did not present himself at trial to witness or substantiate a justifiable, probable cause or reasonable suspicion for the tress pass warrant and arrest. **(see EXHIBIT-C DISMISSED CRIMINAL CASE-B16-27794, Justice Maria D. Ortiz).** Keys gate Charter school was in defiance of Justice Maria D. Ortiz court order and subpoena and refused to produce the video surveillance tape and other material evidence at trial (spoliation of evidence).

18. The personal attacks launched by the defendants were premeditated, contrived and published in falsity, communicated intentionally, and with malice, for the sole purpose of injuring the good name and reputation of the plaintiff and causing irreparable harm to his character and person.

19. The false statements, innuendos and malicious conduct accused the plaintiff of criminal activity amounting to a felony, unsavory, immoral and disreputable acts "without probable cause" and incompatible with the plaintiffs impeccable character as a law abiding citizen with no criminal history or background, a college graduate, a retired auto worker of 30 years, a stable married man and father of two daughters, a Christian and ordained Baptist Minister.

20. As a result of the aforesaid incidents, tortuous actions and personal vendetta against the plaintiff, the Plaintiff was both psychologically and physically traumatized and has developed extreme anxiety, emotional distress, and depression. The Plaintiff has been under medical care, Psychological therapy and anti depressant medications.

21. Furthermore, Plaintiff remains humiliated by the aforesaid occurrences and has continued to tarnished reputation in his community and among the members of his church, where he served as a evangelical minister.

22. Plaintiff is entitled to recover his aforesaid damages from Defendant in accordance with Florida law. Plaintiff demands a trial by jury for all issues as a matter of constitutional right.

**COUNT I**
**DEFAMATION (LIABLE) (SLANDER) FLORIDA STATUTE: 836.01, 04, 06, 08, 09, 11**

23. Plaintiff adopts and incorporates into Count I the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

24. At all times material hereto, Vice Principal "Thermes" was an agent, employee, and / or representative of Defendant, CHARTER SCHOOLS USA, INC.

25. At all times material hereto, Vice Principal "Thermes" was acting in the course and scope of his employment with Defendant, CHARTER SCHOOLS USA, INC.

26. Defendant, CHARTER SCHOOLS USA, INC., Is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of Vice Principal "Thermes," who slandered Plaintiff, MARK A. TURNER, by (I) with reckless and careless malice or indifference published, communicated to third parties a false statement; both "liable and slanderous" (2) about Plaintiff; (3) to other members of the Keys Gate Charter School staff; (4) which unfoundedly and unreasonably accused Plaintiff of being "violent," "disruptive," and "a threat" to students of Keys Gate Charter School; and (5) which directly and proximately caused injury to Plaintiff in the form of humiliation, anxiety, and

5

depression, while tarnishing his reputation as an ordained minister in his community.

27. The aforesaid warrants by Plaintiff as a result of Defendants slanderous statements are egregious acts, maleficent conduct and causation of irreparable and permanent damage, and Plaintiff will suffer such losses and impairments in the future.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, CHARTER SCHOOLS USA, INC., For an amount within the jurisdiction limits of this Honorable Court, to-wit: in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief this Court deems just and appropriate. Plaintiff demands a trial by jury for all issues as a matter of constitutional right.

## COUNT II:
## FALSE IMPRISONMENT FLORIDA STATUTE: 787.02

28. Plaintiff adopts and incorporates into Count II the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

29. At all times material hereto, Mr. Hull, was an agent, employee, and / or representative of Defendant, CHARTER SCHOOLS USA, INC.

30. At all times material hereto, Mr. Hull was acting in the course and scope of his employment with Defendant, CHARTER SCHOOLS USA, INC.

31. Defendant, CHARTER SCHOOLS USA, INC., Is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of Mr. Hull, who falsely imprisoned Plaintiff, MARK A. TURNER, by unlawfully restraining and otherwise clandestinely detaining Plaintiff against his will in a back room of the Keys Gate Charter School administration building on the aforesaid date, where Plaintiff was prohibited from exiting the room and, furthermore, interrogated about his position on the student drop-off

/ pick-up policy by Mr. Hull and Officer Duckworth.

32. As a direct and proximate result of the aforesaid incident, Plaintiff sustained injuries in the form of humiliation, anxiety, and depression, as well as a tarnished reputation given his position a Christian and ordained minister in his community.

33. The aforesaid injuries incurred by Plaintiff are either continuing or permanent in nature, and Plaintiff will suffer such losses and impairments in the future.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, CHARTER SCHOOLS USA, INC., For an amount within the jurisdiction of this Honorable Court, to wit in the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief this Court deems just and appropriate.

## COUNT: III
## MALICIOUS PROSECUTION FLORIDA STATUTE: 95.11 (B), (O), (Q) (G)

34. Plaintiff adopts and incorporates into Count I the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

35. At all times material hereto, Vice Principal "Thermes" was an agent, employee, and / or representative of Defendant, CHARTER SCHOOLS USA, INC.

36. At all times material hereto, Vice Principal "Thermes" was acting in the course and scope of his employment with Defendant, CHARTER SCHOOLS USA, INC.

37. Defendant, CHARTER SCHOOLS USA, INC., Is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of Vice Principal "Thermes," and director "Rodney Hall".

38. With reckless disregard for administrative control and compliance, the defendants subjected the plaintiff to a misuse of the legal machinery for an improper

purpose and without probable cause, contrived in a personal vendetta that was motivated by merit less and groundless malicious prosecution in the scope of their respective administrative vocation, the plaintiff was falsely reprimanded and disciplined for "disruptive behavior" that consequently resulted in disciplinary action by school administration, tarnished reputation and an eventual arrest and incarceration.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, CHARTER SCHOOLS USA, INC., For an amount within the jurisdiction of this Honorable Court, to wit in the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief this Court deems just and appropriate.

## COUNT: IV
## FALSE IMPRISONMENT FLORIDA STATUTE: 787.02

Plaintiff adopts and incorporates into Count III the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

39. At all times material hereto, officer Duckworth was a police officer employed by the state of Florida and the HOMESTEAD POLICE DEPARTMENT.

40. At all times material hereto, officer Duckworth was acting in the course and scope of his employment as a governmental state certified and authorized police officer with defendant, HOMESTEAD POLICE DEPARTMENT and the state of Florida.

Defendant, HOMESTEAD POLICE DEPARTMENT, is therefore vicariously liable" under the doctrine of respond eat superior" for the conduct of officer Duckworth, who falsely imprisoned the plaintiff, MARK A TURNER, deprived him of his constitutional rights regarding the 4th amendment and 14TH amendment by engaging in police misconduct, abuse of process, acting "under the color of law" when in malice he

8

unlawfully restrained and otherwise detained  the Plaintiff against his will in a backroom

of Keys gate Charter School administration building on the aforesaid date, where Plaintiff

was prohibited from exiting the room and furthermore, interrogated about his position on

the student drop-off / pick-up policy by officer Duckworth that consequently ensued and

facilitated a false arrest (without probable cause).

41. The aforesaid charges by the plaintiff as a result of defendant police officers

false imprisonment, are egregious acts and maleficent behavior that impeached the

integrity and virtue of the plaintiff and were the proximate cause of irreparable damage

that are consequently permanent in nature and duration, and the Plaintiff will suffer such

losses and impairments in the future.

42. As a direct and proximate result of the aforesaid incident, Plaintiff sustained

injuries in the form of humiliation, anxiety, and depression, as well as a tarnished

reputation given his position as a Christian and ordained minister in his community.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, HOMESTEAD

POLICE DEPARTMENT for an amount within the jurisdiction of this Honorable Court,

in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other

relief this Court deems just and appropriate.

## COUNT: V
## MALICIOUS PROSECUTION FLORIDA STATUTE: 95.11 (B), (O), (Q) (G)

Plaintiff adopts and incorporates into Count IV the General Allegations in

Paragraphs 1 through 22 as set forth herein, and further alleges:

43. At all times material hereto, officer Duckworth was a police officer employed

by the state of Florida and the Homestead Police department.

44. At all times material hereto, officer Duckworth was acting in the course and scope of his employment as a governmental state certified and authorized police officer with defendant, Homestead Police Department and the state of Florida.

Defendant, HOMESTEAD POLICE DEPARTMENT, is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of officer Duckworth, who violated the 14th amendment and maliciously prosecuted the plaintiff, MARK A TURNER, deprived him of his constitutional rights regarding the 4th amendment and 14TH amendment by engaging in police misconduct, abuse of process, acting "under the color of law" when in malice he unlawfully restrained and otherwise detained the Plaintiff against his will in a backroom of Keys gate Charter School administration building on the aforesaid date, where Plaintiff was prohibited from exiting the room and furthermore, interrogated about his position on the student drop-off / pick-up policy by officer Duckworth, officer.

45. Officer Duckworth became irate and malicious with the Plaintiff when he requested custody of his daughter to peaceably leave the school premises and withdraw his child from Keys Gate Charter School, the Plaintiff made references to his belligerent conduct being captured on the video surveillance camera.

46. Officer Duckworth in malice, implied, conjectured false and defamatory remarks about the Plaintiffs character and conduct, these statements mere "pre-text" that consequently motivated, facilitated and ensued the false arrest by hand cuffing the Plaintiff, placing him in the back to a police cruiser and transported him to jail, the arrest was motivated by officer Duckworth's malicious prosecution.

47. The aforesaid charges by the plaintiff as a result of defendant police officers

malicious prosecution it constitutes a misuse of the legal machinery for an improper purpose these are egregious acts, permanent in nature and the causation of irreparable damage, the Plaintiff will suffer such losses and impairments in the future.

48. As a direct and proximate result of the aforesaid incident, Plaintiff sustained injuries in the form of humiliation, anxiety, and depression, as well as a tarnished reputation given his position as a Christian and ordained minister in his community.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, HOMESTEAD POLICE DEPARTMENT for an amount within the jurisdiction of this Honorable Court, in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief this Court deems just and appropriate. Plaintiff demands a trial by jury for all issues as a matter of constitutional right. Plaintiff demands a trial by jury for all issues as a matter of constitutional right.

## COUNT: VI
## FALSE IMPRISONMENT/ ARREST FLORIDA STATUTE: 787.02

Plaintiff adopts and incorporates into Count V the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

49. At all times material hereto, officer Duckworth was a police officer employed by the state of Florida and the HOMESTEAD POLICE DEPARTMENT.

50. At all times material hereto, officer Duckworth was acting in the course and scope of his employment as a state authorized police officer with defendant, Homestead Police Department and the state of Florida.

51. Defendant, HOMESTEAD POLICE DEPARTMENT, is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of officer Duckworth,

11

who falsely imprisoned the plaintiff, MARK A TURNER, deprived him of his

constitutional rights regarding the 4th amendment and 14TH amendment by engaging in

police misconduct, abuse of process, acting "under the color of law" when in malice he

unlawfully restrained and otherwise detained  the Plaintiff against his will in a backroom

of Keys gate Charter School administration building on the aforesaid date, where Plaintiff

was prohibited from exiting the room and furthermore, interrogated about his position on

the student drop-off / pick-up policy, the false and defamatory remarks officer Duckworth

declared about the Plaintiffs character and conduct were mere "pre-text" by officer

Duckworth that consequently facilitated and ensued a false arrest, the Plaintiff was

handcuffed and placed in the back of a police cruiser (without probable cause) and

transported to jail and incarcerated.

     52. The aforesaid charges by the plaintiff as a result of defendant police officers

false arrest, are irreparable, permanent in nature, and the Plaintiff will suffer such losses

and impairments in the future.

     53. As a direct and proximate result of the aforesaid incident, Plaintiff sustained

injuries in the form of humiliation, anxiety, and depression, as well as a tarnished

reputation given his position as a Christian and ordained minister in his community.

     WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, HOMESTEAD

POLICE DEPARTMENT for an amount within the jurisdiction of this Honorable Court,

in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other

relief this Court deems just and appropriate.

Plaintiff demands a trial by jury for all issues as a matter of constitutional right.

## COUNT VII:
## FALSE IMPRISONMENT OF A CHILD FLORIDA STATUTE: 787.02

Plaintiff adopts and incorporates into Count VI the General Allegations in Paragraphs 1 through 22 as set forth herein, and further alleges:

54. Plaintiff adopts and incorporates into Count II the General Allegations in Paragraphs 1 through 19 as set forth herein, and further alleges:

55. At all times material hereto, Mr.'s Thermes and faculty staff Shears, were agents, employees, and / or representatives of Defendant, CHARTER SCHOOLS USA, INC.

56. At all times material hereto, Vice principal Thermes and faculty Shears were acting in the course and scope of their employment with Defendant, CHARTER SCHOOLS USA, INC.

57. Defendant, CHARTER SCHOOLS USA, INC., Is therefore vicariously liable "under the doctrine of respond eat superior" for the conduct of Vice principle Thermes and faculty staff Shears, who falsely imprisoned Plaintiff, ASHLEY TURNER, by unlawfully restraining and otherwise detaining the Plaintiffs child against his will after school had recessed for the day on September 6, 2016 at 3:30, Florida statute 787.02 declares in a child's parent or legal guardian request custody of a child or minor under his or her providential care, a parent or legal guardian has complete autonomy regarding possession of child custody, a governing body or adult must present the child without apprehension or delay, to deny immediate possession is a false imprisonment and felonious. Ashley Turner was involuntarily restrained in a back room of the Keys Gate Charter School administration building on the aforesaid date, on September 6, 2016, this

13

forcible detention consequently led too created the adverse and hostile set of complicated

circumstances and a negative situation concerning and the trespass warrant that initiated

the falsely arrested the plaintiff

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, CHARTER

SCHOOLS USA, INC., For an amount within the jurisdiction of this Honorable Court, to

wit in the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief

this Court deems just and appropriate.

## COUNT: VIII
## FALSE IMPRISONMENT OF A CHILD FLORIDA STATUTE: 787.02

Plaintiff adopts and incorporates into Count VII the General Allegations in

Paragraphs 1 through 22 as set forth herein, and further alleges:

58. At all times material hereto, officer Duckworth was a police officer employed

by the state of Florida and the Homestead Police department.

59. At all times material hereto, officer Duckworth was acting in the course and

scope of his employment as a state certified and authorized police officer with defendant,

Homestead Police Department and the state of Florida.

Defendant, HOMESTEAD POLICE DEPARTMENT, is therefore vicariously liable for

"under the doctrine of respond eat superior" the conduct of officer Duckworth, who

falsely imprisoned the child of the plaintiff.

60. Florida statute 787.02 declares if a child's parent or legal guardian request

custody of a child or minor under his or her providential care, the parent or legal guardian

has complete autonomy with regard to custody, a governing body or adult must present

the child without apprehension or delay, to deny immediate possession is a false

imprisonment and felonious.

61. By unlawfully restraining ASHLEY TURNER, and otherwise detaining the Plaintiffs child against his will in the of Keys gate Charter School administration building on the aforesaid date, Officer Duckworth deliberately (delayed) and refused to retrieve Ashley Turner on September 23, 2016, created an adverse and hostile set of complicated circumstances concerning the trespass warrant and falsely arrested the plaintiff when he requested custody of his child so he could peaceably leave the premises and withdraw his child from Keys Gate Charter to be compliant with the trespass warrant he issued.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, HOMESTEAD POLICE DEPARTMENT for an amount within the jurisdiction of this Honorable Court, in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other relief this Court deems just and appropriate.

Plaintiff demands a trial by jury for all issues as a matter of constitutional right.

## COUNT XL
## 42 U.S. CODE, SECTION 1983

Plaintiff adopts and incorporates into Count VIII the General Allegations in Paragraphs 1 through 21 as set forth herein, and further alleges:

62. At all times material hereto, officer Duckworth was a police officer employed by the state of Florida and the Homestead Police department.

63. At all times material hereto, officer Duckworth was acting in the course and scope of his employment as a state authorized police officer with defendant, Homestead Police Department and the state of Florida.

64. Defendant, HOMESTEAD POLICE DEPARTMENT, is therefore vicariously

liable "under the doctrine of respond eat superior" for the conduct of officer Duckworth,

who falsely imprisoned the plaintiff, MARK A TURNER, deprived him of his

constitutional rights regarding the 4th amendment and 14TH amendment by engaging in

police misconduct, abuse of process, acting "under the color of law" when in malice he

unlawfully restrained and otherwise detained the Plaintiff against his will in a backroom

of Keys gate Charter School administration building on the aforesaid date, where Plaintiff

was prohibited from exiting the room and furthermore, interrogated about his position on

the student drop-off / pick-up policy, the false and defamatory remarks officer Duckworth

declared about the Plaintiffs character and conduct were mere "pre-text" by officer

Duckworth that consequently facilitated and ensued a false arrest, the Plaintiff was

handcuffed and placed in the back of a police cruiser and transported to jail and

incarcerated.

65. The aforesaid charges by the plaintiff as a result of defendant police officers

false arrest, are both continuing and irreparable, and the Plaintiff will suffer such losses

and impairments in the future. As a direct and proximate result of the aforesaid incident,

Plaintiff sustained injuries in the form of humiliation, anxiety, and depression, as well as

a tarnished reputation given his position as a Christian and ordained minister in his

community.

WHEREFORE, Plaintiff, MARK A. TURNER, sues Defendant, HOMESTEAD

POLICE DEPARTMENT for an amount within the jurisdiction of this Honorable Court,

in excess of the sum of Fifteen Thousand Dollars ($ 15,000.00), in addition to any other

relief this Court deems just and appropriate.





September 16, 2016


2366 SE 12th Court
Unit 121
Homestead, Florida 33035


Mr. Mark A. Turner,


This letter serves as an official notification to inform you that Keys Gate Charter School considers your disruptive actions on September 6, 2016 to be unacceptable. This type of behavior will not be tolerated while on the grounds of any public school. Your disruptive presence has been considered an unlawful act from this day forward.

The Florida State Statute covering this law is provided in chapter 871.01; **disturbing schools and religious and other assemblies.** Violation of this law is considered to be a second degree misdemeanor. You have been observed behaving in a disruptive manner by school personnel, on school grounds and/or its immediate surroundings where school procedures/activities were taking place. Your presence has been reported to local law enforcement, and a trespass action has been initiated.

A trespass action has been sanctioned (Florida State Statute 810.97) **trespass upon grounds or facilities of a school.** Violation of this law is considered to be a first or second degree misdemeanor and the violator may be fined up to $1,000.00 and/or one year in jail.

Keys Gate Charter School has high expectations for the behavior of both its students and parents. Understand that due to your actions you are no longer permitted on the grounds of Keys Gate Charter School. You are responsible for making alternative arrangements regarding the drop off and pickup of your child from this point forward.


Sincerely,

Rodney Hull
Director
Keys Gate Charter School

Cc:     Donté Fulton-Collins, South Florida Regional Director of Education-CSUSA


2355 SE 28th Avenue, Homestead, Florida 33035

*A Member of the Charter Schools USA Family of Schools.*

# EXHIBIT- B



1100327114

| OBTS NUMBER | | **COMPLAINT/ARREST AFFIDAVIT** | | POLICE CASE NO. 1609230013 | |
|---|---|---|---|---|---|

| SPECIAL OPERATION: | ☐ FELONY  [X] MISD  ☐ TRAFFIC  ☐ JUV  ☐ DV ☐ WARRANT        FUGITIVE WARRANT* | ☐ MOVES ☐ In State | ☐ CW INF ☐ Out State | JAIL NO. 160162307 | PMHD NO | COURT CASE NO. B16027794 |
|---|---|---|---|---|---|---|

| IDS NO. | AGENCY CODE 010 | MUNICIPAL P.D. DEF. ID NO. | MDPD RECORDS AND ID NO. | STUDENT ID NO. | GANG RELATED NO | FRAUD RELATED NO |
|---|---|---|---|---|---|---|

| DEFENDANT'S NAME (LAST, FIRST, MIDDLE) TURNER, MARK ANTHONY | | ALIAS and / or STREET NAME | SIGNAL: |
|---|---|---|---|

| DOB (MM/DD/YYYY) 12/02/1958 | AGE 57 | RACE B | SEX M | HISPANIC ETHNICITY: NO AFR | HEIGHT 6'03 | WEIGHT 218 | HAIR COLOR BLK | HAIR LENGTH SHT | HAIR STYLE WAV | EYES HAZ | GLASSES YES | FACIAL HAIR CLN | TEETH NOR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| SCARS, TATTOOS, UNIQUE PHYSICAL FEATURES (Location, Type, Description) | PLACE OF BIRTH (City, State/Country) YOUNGSTOWN OH US |
|---|---|

| LOCAL ADDRESS | | PHONE | CITIZENSHIP US |
|---|---|---|---|

| PERMANENT ADDRESS (Street, Apt. Number) 2366 SE 12TH CT | (City) HOMESTEAD | (State) FL | (Country) US | (Zip) 33035 | PHONE (330) 501-0352 | OCCUPATION |
|---|---|---|---|---|---|---|

| SCHOOL OR BUSINESS ADDRESS (Street, Apt. Number) | (City) | (State) | (Country) | (Zip) | PHONE | ADDRESS SOURCE VERBAL |
|---|---|---|---|---|---|---|

| DRIVER'S LICENSE NUMBER/STATE | SOCIAL SECURITY NO. XXX-XX-XXXX | WEAPON SEIZED NO | Defendant/CONCEALED WEAPON PERMIT NONE | INDICATION OF: Alcohol Infuence: N  Drug Infuence: N |
|---|---|---|---|---|

| ARREST DATE 09/23/2016 | ARREST TIME 10:22 | ARREST LOCATION 2325 SE 28TH AVE HOMESTEAD, FL 33035 | | GRID 2697 |
|---|---|---|---|---|

| CO-DEFENDANT NAME | | DOB | ☐ IN CUSTODY ☐ AT LARGE | ☐ FELONY ☐ DV | ☐ JUVENILE ☐ MISDEMEANOR |
|---|---|---|---|---|---|
| CO-DEFENDANT NAME | | DOB | ☐ IN CUSTODY ☐ AT LARGE | ☐ FELONY ☐ DV | ☐ JUVENILE ☐ MISDEMEANOR |
| CO-DEFENDANT NAME | | DOB | ☐ IN CUSTODY ☐ AT LARGE | ☐ FELONY ☐ DV | ☐ JUVENILE ☐ MISDEMEANOR |

| JUV only | Relation | Name | Street | Zip | Phone | Contacted? |
|---|---|---|---|---|---|---|

| CHARGES | CHARGE AS. | CNTS | FL STATUTE NUMBER | VIOL OF SECT. | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 1. M/1-TRESPASS ON SCHOOL GROUNDS/AFTER WARNING | F.S. | 1 | 810.097(2) | | | 90000071 | N | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the 23 day of SEPTEMBER, 2016, at 10:08 at 2325 SE 28TH AVE. HOMESTEAD, FL 33035

ON THIS DATE, OFFENDER (TURNER) WAS ISSUED A LETTER ADVISING HIM NOT TO TRESPASS AT ANY OF THE KEYS GATE CHARTER SCHOOLS. THE LETTER WAS GIVEN TO ME BY MR. RODNEY HULL, (DIRECTOR OF STUDENT SERVICES) FOR CONDUCT FROM A PREVIOUS INCIDENT AT THE K THROUGH 2 BUILDING. THE OFFENDER, WHO SIGNED AN FORM STATING HE IS AWARE OF POLICIES AND PROCEDURES REGARDING PICKING UP CHILDREN. THE OFFENDER BECAME IRATE AND ATTEMPTED WALK OVER TO THE SCHOOL AND PICK HIS CHILD UP DESPITE BEING MADE AWARE THAT HE COULD NOT (PER SCHOOL REGULATIONS). HE THEN BEGAN TO CREATE A SCENE IN FRONT OF THE HIGH SCHOOL, AT WHICH TIME, I EXPLAINED TO HIM THAT HE WAS OFFICIALLY TRESPASSED FROM ENTERING ANY OF THE BUILDINGS (K THROUGH 2, 3 THROUGH 6, AND THE HIGH SCHOOL). HE ACKNOWLEDGED THAT HE... [Continued on Next Page]

| HOLD FOR OTHER AGENCY VERIFIED BY | ☐ HOLD FOR BOND HEARING. DO NOT BOND OUT (Officer Must Appear at Bond Hearing). | ☐ I Understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes |
|---|---|---|
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS 23 day of SEPTEMBER, 2016 | ☐ You need not appear in court, but must comply with the instructions on the reverse side hereof. |
| *signature* DUCKSWORTH, D: Court ID: 010-00585 | WRIGHT, G: Court ID: 010-00688 | |



1100327114

| OBTS NUMBER | | **COMPLAINT/ARREST AFFIDAVIT CONTINUATION** | | POLICE CASE NO.<br>1609230013 | | |
|---|---|---|---|---|---|---|

| JAIL NO.<br>160162307 | | COURT CASE NO.<br>B16027794 | | | | | |
|---|---|---|---|---|---|---|---|

| SPECIAL OPERATION: | ☐ FELONY   ☒ MISD   ☐ TRAFFIC   ☐ JUV   ☐ DV<br>☐ WARRANT            FUGITIVE WARRANT: | MOVES<br>☐ In State | CIV INF<br>☐ Out State | JAIL NO.<br>160162307 | PMHD<br>NO | COURT CASE NO.<br>B16027794 |
|---|---|---|---|---|---|---|

| DEFENDANT'S NAME (LAST, FIRST, MIDDLE)<br>TURNER, MARK ANTHONY | | | | DOB (MM/DD/YYYY)<br>12/02/1958 | | |
|---|---|---|---|---|---|---|

| CO-DEFENDANT NAME | DOB | ☐ IN CUSTODY<br>☐ AT LARGE | ☐ FELONY<br>☐ DV | ☐ JUVENILE<br>☐ MISDEMEANOR |
|---|---|---|---|---|
| CO-DEFENDANT NAME | DOB | ☐ IN CUSTODY<br>☐ AT LARGE | ☐ FELONY<br>☐ DV | ☐ JUVENILE<br>☐ MISDEMEANOR |

| CHARGES | CHARGE AS: | CNTS | FL STATUTE NUMBER | VIOL OF SECT. | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |

WAS AWARE OF THE TRESPASS AND WOULD COMPLY. I ALSO HAD TO TELL HIM TO CALM DOWN SEVERAL TIMES WHEN HE WAS THERE COMPLAINING ABOUT THE SCHOOL POLICY. APPROXIMATELY 20 MINUTES LATER. I RESPOND TO THE FRONT LOBBY AND THE OFFENDER WAS INSIDE THE LOBBY DESPITE BEING TOLD EARLIER NOT TO ENTER ANY OF THE BUILDINGS. THE OFFENDER SPONTANEOUSLY STATED "YOU SAID ONLY THE K THROUGH 2 BUILDING). I TOLD THE OFFENDER TO LEAVE IMMEDIATELY, AT WHICH TIME, THE OFFENDER BECAME ARGUMENTIVE. AT THE TIME, THERE WERE SEVERAL STUDENTS AND PARENTS THERE. THE OFFENDER WAS ARRESTED AND TRANSPORTED TO HOMESTEAD P.D.

NOTE: I SPOKE WITH SEVERAL STAFF MEMBERS FROM THE K THROUGH 2 BUILDING AS WELL AS THE HIGH SCHOOL AND THEY ALL ADVISED THAT HE CONTINUOUSLY CAUSED PROBLEMS WITH HIS PRESENCE.

| HOLD FOR OTHER AGENCY VERIFIED BY | ☐ HOLD FOR BOND HEARING. DO NOT BOND OUT (Officer Must Appear at Bond Hearing). | ☐ I Understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes. |
|---|---|---|
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT.<br><br>*[signature]*<br><br>DUCKSWORTH, D: Court ID: 010-00585 | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS 23 DAY OF SEPTEMBER, 2016<br><br>*[signature]*<br><br>WRIGHT, G: Court ID: 010-00688 | ☐ You need not appear in court, but must comply with the instructions on the reverse side hereof. |

# Property Intake Report

Number:        160162307

CIN:           0000000

Name:          TURNER, MARK ANTHONY

Received On:   9/23/2016  6:06:06PM

Received By:   E315189




**Items:**

| Item Type | Item Description | Qty |
|---|---|---|
| NOTES | BAG #  576 | 1 |
| BOARD | BOARD | 1 |
| SHOES | PAIR | 1 |

**Signatures:**

| Inmate Signature | Police  Officer Signature |
|---|---|
| | No Signature |
| Custodian Signature | Witness Signature |
| 315189 Gibb | No Signature |

Unclaimed property shall be retained by the department for **30 days** following notification to the inmate of the availability of the property for pick-up. All unclaimed property will be considered abandoned.

You are responsible for satisfying all debt charged to you during any period of incarceration. Outstanding debt from incarcerations within the last **90 days** will be applied to your current account.  As well, unclaimed money from a previous incarceration shall be used to first satisfy debt from your current incarceration, and the remaining funds will be placed into your account.

**DISCHARGE MEDICATION PHONE LINE**
If during your incarceration in a Miami-Dade County Jail you were given medication(s) for a serious illness, and are released, you may be eligible for community referral within 24 hours after release and a 7-day supply of discharge medication(s). To determine eligibility you must call the Corrections Health Services Medication Hotline at (305) 585-6330 within 24 hours of release. You will need to provide the following information: jail number, full name, telephone number and date of birth.  A representative will contact you to determine eligibility.

Si durante su detención en una cárcel del Condado Miami-Dade le dieron medicamento(s) para una enfermedad grave, y usted es puesto en libertad, usted pudiera calificar como referido a servicios comunitarios dentro de las 24 horas después de haber sido puesto en libertad y para recibir 7 días de los medicamento(s) suministrados. Para determinar la elegibilidad debe llamar a la línea directa de medicamentos de Corrections Health Services al (305) 585-6330 dentro de las primeras 24 horas de su liberación. Usted tendrá que proveer la siguiente información: número de la cárcel, nombre completo, número de teléfono y fecha de nacimiento. Un representante se pondrá en contacto con usted para determinar su elegibilidad.

Si pandan ou nan yon prizon nan Konte Miami-Dade yo te ba w medikaman pou yon maladi grav, lè yo lage w nan prizon an, ou ka kalifye pou yo refere w kote nan kominote a pou w jwenn asistans anvan 24 èdtan pase de lè yo te lage w la, epi ba w ase medikaman ki pou dire w jiska 7 jou. Pou detèmine si w kalifye, ou dwe rele Liy Dirèk (hotline) pou Medikaman nan Sèvis Medikal Depatman Koreksyon an nan (305) 585-6330 anvan 24 èdtan pase de lè yo te lage w la. Wap bezwen bay enfòmasyon sa yo: nimewo prizon w, non w okonplè, nimewo telefòn w ak dat ou fèt. Yon reprezantan ap kontakte w pou detèmine si w kalifye.

This report may contain privileged and/or confidential information that is intended solely for the use of the Correctional Facility. The report may contain nonpublic personal information about inmates subject to the restrictions of privacy laws.  You may not directly or indirectly reuse or disclose such information for any purpose other than to provide the services for which you are receiving the information.

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☐ TRAFFIC/MISDEMEANOR<br>☐ OTHER | MEMORANDUM OF COSTS | CASE NUMBER<br>B16 27794 |
|---|---|---|

| THE STATE OF FLORIDA | VS. | CLOCK IN |
|---|---|---|

PLAINTIFF    **Turner, Mark A**    DEFENDANT/RESPONDENT

# EXHIBIT- C

| FINE/COSTS AS ASSESSED | | FLORIDA STATUTE NO. | WAVE* |
|---|---|---|---|
| ◆ County / State (LETTF) | $ 5.00 | 938.01(1),938.15 | |
| ◆ Crimes Compensation Trust Fund (CCA) | $ 50.00 | 938.03 | |
| ◆ Additional Cost Fine/Fort. | $ 60.00 | 938.05 | |
| ◆ Additional County Court Costs | $ 65.00 | 939.185 (1) (a) | |
| ◆ Crimes Prevention Program | $ 20.00 | 775.083 (Ord. 98-171) | |
| ◆ Teen Court Costs | $ 3.00 | 938.19 | |
| ◆ Supplemental Fine Surcharge | $ 85.00 | 939.185(1) (b) | |
| ◆ Cost of Prosecution | $ 50.00 | 938.27 (8) | |
| ◆ Crime Stoppers Programs | $ 20.00 | 938.06 | |
| **TOTAL** | $ 358.00 | | |
| ◆ Child Advocacy Trust Fund | $ 151.00 | 938.10 (1) | |
| ◆ Filing Fee (Agency) | $ 10.00 | 34.045(1) (c) | |
| ◆ Filing Fee (Forfeiture Fund) | $ 40.00 | 34.045(1) (b) | |
| ◆ Public Defender Application Fee | $ 50.00 | 27.52 | |
| ◆ Fine | $ | 775.083 (1) | |
| ◆ Surcharge (5% of Fine) | $ | 938.04 | |
| ◆ BUI Additional Costs | $ 135.00 | 938.07 | |
| ◆ Alcohol & Drug Abuse Programs | $ | 938.21 | |
| ◆ County Alcohol & Drug Abuse Trust Fund | $ 15.00 | 938.13 | |
| ◆ BUI BRAIN/Spinal Cord Injury | $ 60.00 | 327.35 (9) | |
| ◆ Prostitution Penalty | $ 5,000.00 | 796.07 (6) | |
| ◆ Domestic Violence Surcharge | $ 201.00 | 938.08 | |
| ◆ Rape Crisis Trust Fund | $ 151.00 | 938.085 | |
| ◆ Wildlife Costs | $ 250.00 | 379.403 | |
| ◆ FDLE Operating Trust Fund | $ 100.00 | 938.055 | |
| ◆ Cost of Defense | $ 50.00 | 938.29 | |
| ◆ Other | $ | | |

**TOTAL FINE / COSTS:**    $ 50    **DUE TODAY** 12/14/16

Payment is to be made by **cash, credit card, money order, or cashier's check** made payable to the **Clerk of Courts**. Please indicate your name, above case number, and write "Fine/Costs" on your payment. You are responsible for keeping the receipt. Payment Address: 1351 N.W.12th Street, Suite 8100, Miami, Fl. 33125; 175 N.W. 1st Avenue, Room 142 Miami, FL 33128, or pay online at www.miami-dadeclerk.com. Pursuant to F.S. 322.245(5)(a) the Clerk's Office will be sending notification to DHSMV on cases where court costs and fines have not been paid in full by the due date. The defendant must pay court costs in full or sign up for a payment plan prior to the due date to avoid the risk of driver license suspension. **Please Note: If probation has been extended the due date will change accordingly**

Defendant's Signature: _____    Date: _____

Address of Defendant: 23106 SE 12th (Homestead) Fla    Zip Code 33035

Done and Ordered in Miami-Dade County, Florida this _____ day of _____, 20___

**\* WAVE CODES:**
C- CONVERTED TO COMMUNITY SERVICE
P- PLEA (STATE NEGOTIATED)
S- SUSPENDED     J- JUDGMENT/LIEN
T- TIMED SERVED   W- WAIVED

MARIA D. ORTIZ
COUNTY COURT JUDGF

Judge's Signature

## CASE LAW SLANDER AND LIABEL

"[T] he law presumes malice in their utterance," <u>Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592 (1906)</u>, where the words are "… of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect." <u>Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 236 (1933)</u>

The Florida Supreme Court found that defamation per se statements are so powerful in their ability to hurt someone that Florida would deem them to be presumed harmful as a matter of law. (<u>See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887)</u>.) In a defamation per se case, the judge will allow damages to be awarded in these cases even if no evidence of harm has been presented.

In Florida, punitive damages are available to a plaintiff who can prove the defendant was guilty of malice with regard to the defamatory communications (written or oral). Generally, malice can be defined as reckless or careless indifference to a victim's rights and feelings and can be based on spite, vengeance or bad motives. As explained by a Florida court in a case of slander per se:– <u>Lawn wood Medical Center Inc. v. Sadow, 43 So. 3d 710, 729 (Fla. 4th DCA 2010)</u>.

## CASE LAW MALICIOUS PROSECUTION

An action for malicious prosecution possesses the following elements: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for

the original proceeding; (5) there was malice on the part of the present defendant, and (6) the plaintiff suffered damage to the result of the original proceeding. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1355 (Fla.1994).

**Litigation Privilege Limits - But Does Not Bar - Malicious Prosecution**

But the litigation privilege has limits, according to January 2018 ruling by the First District Court of Appeal of Florida. The case, Inlet Beach Capital Investments LLC v. David PearsonIn Fisher v. Debrincat, 169 So. 3d 1204 (Fla. Fourth DCA 2015) the Fourth District Court of Appeals refused to follow Wolfe, supra, and held that a malicious prosecution action was not barred by the litigation privilege. If the litigation privilege could apply to bar to malicious prosecution, this would mean that the tort of malicious prosecution would be effectively abolished in Florida - or, at the very least, eviscerated beyond recognition. The Fourth District cited a similar case in the Fifth District, Wright v. Yurko, 446 So. 2d 1162 (Fla. 5th DCA 1984) as well as the Second District holding in Olson v. Johnson, 961 So. 2d 356 (Fla. 2nd DCA 2007).

In refusing to follow the Third District's opinion in Wolfe, supra, the Fourth District in Fisher, supra, makes a compelling argument that the Supreme Court's broad language in Levin, supra, was not intended to be a legal proceeding in Florida. At 1208, the Fourth District holds:

On February 9, 2017, the Florida Supreme Court issued and opinion in Debrincat v. Fischer, 42 Fla. Weekly S141a (February 9, 2017), The Florida Supreme Court recognized that applying the litigation privilege in this instance against the Debrincats would eviscerate this long-established cause of action for malicious prosecution.

The Florida Supreme Court also explained that the Fourth District Court of Appeal was correct when they reasoned that "[a] n action for malicious prosecution-which is based on a matter of law on causing the commencement or continuation of an original judicial proceeding-could never occur outside the context of litigation. "169 So. 3d at 1209.

Therefore, "" malicious prosecution could never be established if the commencement or continuation of an original proceeding against the plaintiff were offered in the immunity under the litigation privilege. "Id. At 1207. Further, the Florida Supreme Court Florida has recognized that the litigation privilege does not act as a bar to a malicious prosecution claim. See Olson v. Johnson, 961 So. 2d 356, 360-61 (Fla. 2d DCA 2007); Wright v. Yurko, 446 So. 2d 1162, 1164-65 (Fla. 5th DCA 1984).

Those that have been wrongfully included as defendant in a Florida action will be able to assert a claim for malicious prosecution and not be barred by the litigation privilege. The Florida Supreme Court has refused to hold that litigation privilege bars to claim for litigation privilege.

## CASE LAW FALSE IMPRISONMENT

Sakharoff v. City of Boca Raton, et al., Palm Beach County Circuit Court, 15th Circuit, Case No. 502005CA003106.

In order to stop a person for questioning or investigation, police must have "reasonable suspicion" that the person has or is committing to crime. "Although the 'reasonable suspicion' standard is less demanding than probable cause, it must be more than an inchoate and un particularized suspicion or hunch," the court explained, quoting the Eleventh Circuit's 1999 decision in United States v. Simmons.

19

Perpetrators of false imprisonment are oftentimes individuals other than retail stores. Any person or entity can be liable for false imprisonment if they meet the appropriate elements. In order to recover under a theory of false imprisonment, the plaintiff must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful. Argoe v. Three Rivers Behavioral Health, L.L.C., 392 S.C. 462, 710 S.E.2d 67 (2011).

Sufficient to establish forcible restraint. Cf. McCloud v. State, 335 So.2d 257 (Fla. 1976); S.W. v. State, 513 So.2d 1088 (Fla. 3d DCA 1987); Santiago v. State, 497 So.2d 975 (Fla. 4th DCA 1986)

The essence of false imprisonment is the act of depriving the victim of personal liberty or freedom of movement for any length of time. In this case, the victim was briefly deprived of her ability to leave. For this reason, there was sufficient evidence to submit the case to the jury. See State v. Horton, 442 So.2d 408 (Fla. 2d DCA 1983) (disputed facts on whether restraint or confinement occurred should have been presented to the jury); Jane v. State, 362 So.2d 1005 (Fla.D. 4th DCA 1978) (holding victim in a bear hug was sufficient evidence of false imprisonment).

Specific intent require some special mental element over and above the mental state required for the criminal act itself. State v. Medlin, 273 So.2d 394, 396 (Fla. 1973); State v. Oxx, 417 So.2d 287, 289 (Fla. 5th DCA 1982). Because the false imprisonment statute is a general intent statute, we hold it is not necessary for the state to allege or prove a specific intent or purpose to establish the offense of false imprisonment.

## CASE LAW FALSE IMPRISONMENT OF A CHILD OR MINOR

When your 4th Amendment right is violated, you can collect damages for the violation under Title 42 section 1983 of the U.S. Code. This law states that when anyone holds a government position deprived of its constitutional or statutory rights, then that state representative is liable for their actions. Interference with child custody (Fla. Stat. § 787.03)

(1) Whoever, without lawful authority, knowingly or recklessly takes or entices, or aids, abets, hires or otherwise procures another to take or entice, any minor or any incompetent person from the custody of the minority or incompetent person's parent, his or her guardian, a public agency having the lawful charge of the minor or incompetent person, or any other lawful custody commits the offense of interference with custody and commits to felony of the third degree, punishable as provided in s. 775,082, s. 775,083, s. 775,084.

(2) In the absence of a court order determining rights to custody or visitation with any minor or with any incompetent person, any parent of the minor or incompetent person, whether natural or adoptive, step-parent, legal guardian, or relative of the minor or incompetent person who has custody and who takes, detains, conceals, or entices away that minor or incompetent person within or without the state with malicious intent to deprive another person of his or her right to custody of the minor or incompetent person commits a felony of the third degree, punishable as provided in s. 775,082, s 775,083, or s. 775,084.

21

## CERTIFICATE OF SERVICE

I Mark A Turner certify that a true and accurate copy of this complaint was served upon the defendants on September 1, 2018

PRO-SE LITIGANT
**MARK A. TURNER**
Plaintiff,
1411 Se 26th Ave.
Homestead, Florida 33035

Ph. 330-501-0352
Markanthony37@sbcglobal.net
Date: September 1, 2018
Signature
-------------------