UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24005-CIV-GAYLES/MCALILEY

MARK A. TURNER,

     Plaintiff,

vs.

CHARTER SCHOOLS USA, INC, *et al.*,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON MOTIONS FOR SUMMARY JUDGMENT**

     Defendants Charter Schools USA, Inc. and Keys Gate Charter School filed a Motion for Summary Judgment, as did Defendants City of Homestead and Homestead Police Department. (ECF Nos. 190, 192).  The Honorable Darrin P. Gayles referred both Motions to me for resolution. (ECF No. 76). The Motions are fully briefed. (ECF Nos. 190-1, 191, 194, 195, 196, 197, 202, 208). I have carefully considered the parties' memoranda of law, the pertinent portions of the record and the applicable law. For the reasons set forth below, I recommend that the Court grant both Motions for Summary Judgment.

## I.    BACKGROUND[1]

     Plaintiff's minor daughter attended elementary school at Keys Gate Charter School

_____

[1] The facts set forth herein are taken from the parties' respective Statements of Undisputed Material Facts, unless otherwise noted.

(the "School") at the time of the events giving rise to this lawsuit. (ECF Nos. 191 at ¶ 1; 190-1 at ¶ 5; 195, 197 at ¶ 1). The Parent & Student Handbook in effect during the relevant period set forth the School's dismissal policy. (ECF No. 190-4). For those students in kindergarten through second grade who travel home by car,[2] the Handbook instructs that "Parents/guardians are required to use the drive-thru loop. Walk ups are not permitted." (*Id.* at 17) (emphasis in original). Plaintiff received a copy of the Handbook and agreed to comply with the policies set forth therein. (ECF No. 190-3, *Deposition of Mark A. Turner*, at 128:17-130:21).

### A.    The Dismissal Incident

On September 6, 2016, Plaintiff drove to the School to pick up his daughter. (ECF No. 190-3 at 151:12-152:11). Dismissal began at 3:30 p.m. (ECF Nos. 195, 197 at ¶ 4). At approximately 3:45 p.m., Plaintiff parked his car and walked to the front of the School where he requested his daughter from her teacher, Ms. Shears. (*Id.* at 152:12-25). Ms. Shears responded "[y]ou are going to have to wait until 4:00." (ECF No. 190-3 at 153:4-7). Plaintiff told Ms. Shears that he could not wait because his daughter had a piano lesson. (*Id.* at 154:10-12). Ms. Shears again reiterated that Plaintiff had to wait until 4:00 p.m., at which point Plaintiff walked past Ms. Shears into the school cafeteria where his daughter was waiting with other students. (*Id.* at 154:13-24, 155:19-156:5). Two staff members immediately followed Plaintiff inside the School, one of whom was speaking into a walkie-

---

[2] Plaintiff testified that his daughter was in the first or second grade. (ECF No. 190-3 at 123:10-20).

talkie.[3] (ECF No. 222 at Ex. 28, *Surveillance Video*). Plaintiff motioned to his daughter to come to him and when she did, he took her hand and began to leave. (ECF No. 190-3 at 156:9-17).

At that point, the School's Vice Principal, Ms. Thermes, approached Plaintiff and told him that he was not allowed to be in the school building at that time. (*Id*. at 162:1-8). Plaintiff disagreed, stating that he had the right to retrieve his daughter because it was after the dismissal bell. (*Id*.). A police officer from the Homestead Police Department spoke with Plaintiff and Vice Principal Thermes as Plaintiff attempted to leave the school building with his daughter. (*Id*. at 162:9-15; *see also* ECF Nos. 195, 197 at ¶ 6). The officer told the parties "to go and take this issue to [the Principal] Mrs. Baez," (ECF No. 190-3 at 162:14-15), and advised Plaintiff "to follow the school rules and next time…wait for the staff to bring his daughter to him." (ECF No. 191-4, *Incident Report*, at 3). Plaintiff responded by "accus[ing] the staff members of attempting to abduct his daughter," and then he "left the school with his daughter with no further incident." (*Id*.).

### B. The Trespass Notice

For the next few weeks, Plaintiff made several requests to meet with Principal Baez regarding the School's dismissal procedures, but to no avail. (ECF Nos. 190-1 at ¶ 10; 195, 197 at ¶¶ 7-8). On the morning of September 23, 2016, Plaintiff again went to the School to request a meeting with Principal Baez. (ECF Nos. 190-1 at ¶ 11; 195, 197 at ¶ 9). The

---

[3] These facts are taken from a surveillance video which captures Plaintiff walking into a school building. The surveillance video does not capture the earlier interaction between Plaintiff and Ms. Shears, and does not have any audio. (ECF No. 222 at Ex. 38).

School's Director of Student Services, Rodney Hull, came to meet Plaintiff in the lobby and escorted him to a conference room. (ECF 190-3 at 189:18-24). Plaintiff voluntarily accompanied Mr. Hull. (*Id*. at 241:4-6). When Plaintiff entered the conference room, a school resource officer from the Homestead Police Department, Officer Duckworth, was present. (*Id*. 190:4-7). Plaintiff sat down, and Mr. Hull closed the door and made introductions. (*Id*. at 193:10-13; 241:21-242:2; 245:5-6; ECF Nos. 195, 197 at ¶ 10). Plaintiff was handed a letter, addressed to Plaintiff and signed by Mr. Hull, that states as follows:

> This letter serves as an official notification to inform you that Keys Gate Charter School considers your disruptive actions on September 6, 2016 to be unacceptable. This type of behavior will not be tolerated while on the grounds of any public school. Your disruptive presence has been considered an unlawful act from this day forward.
>
> The Florida State Statute covering this law is provided in chapter 871.01; **disturbing schools and religious and other assemblies**. Violation of this law is considered to be a second degree misdemeanor. You have been observed behaving in a disruptive manner by school personnel, on school grounds and/or its immediate surroundings where school procedures/activities were taking place. Your presence has been reported to local law enforcement, and a trespass action has been initiated.
>
> A trespass action has been sanctioned (Florida State Statute 810.97) **trespass upon grounds or facilities of a school.** Violation of this law is considered to be a first or second degree misdemeanor and the violator may be fined up to $1,000.00 and/or one year in jail.
>
> Keys Gate Charter School has high expectations for the behavior of both its students and parents. Understand that due to your actions you are no longer permitted on the grounds of Keys Gate Charter School. You are responsible for making alternative arrangements regarding the drop off and pickup of your child from this point forward.

(191-5, *Trespass Notice*) (emphasis in original).

4

Mr. Hull and Officer Duckworth explained to Plaintiff that he "was being trespassed" and was not allowed on the school premises anymore. (ECF No. 190-3 at 194:5-22; 242:3-7). Plaintiff understood that "they were restricting [him] from the building area but not the parking lot area." (ECF Nos. 195, 197 at ¶ 10). Plaintiff also understood that trespassing meant "you got to go off the property, and that's it. No arguments." (ECF No. 190-3 at 248:20-23), and that he was being told to leave. (*Id*. at 253:8-9).

Plaintiff then asked that his daughter be brought to him, so that he could leave the School in compliance with the trespass notice. (*Id*. at 195:6-11). According to Plaintiff, Mr. Hull and Officer Duckworth responded that they "would see what [they] could do about it." (*Id*. at 254:3-9). At that point, Officer Duckworth asked to speak to Plaintiff outside, and Plaintiff agreed. (*Id*. at 254:10-15).  Plaintiff voluntarily left the conference room with Officer Duckworth, and the two men spoke outside the School building. (*Id*. at 246:18-22, 254:16-21).

During Plaintiff's meeting with Mr. Hull and Officer Duckworth, Plaintiff did not ask to leave the conference room, nor was he told that he could not leave. (*Id*. at 252:19-253:6). To the contrary, Plaintiff "felt inclined to follow the directives and the order of the police officer and Mr. H[u]ll" to leave the premises. (*Id*. at 253:8-11). Further, neither Mr. Hull nor Officer Duckworth pushed or struck Plaintiff, or told him to get on the ground. (*Id*. at 245:7-10). Officer Duckworth also did not place Plaintiff in handcuffs, draw his weapon, give Plaintiff any commands or read Plaintiff any *Miranda* rights. (*Id*. at 244:25-245:4, 245:11-16).

5

### C. The Arrest

Once Plaintiff and Officer Duckworth went outside, they had a "civil conversation" about "the situation" for approximately 20 minutes. (*Id*. at 254:13-25, 255:14-21). They "reached a point where [they] just did not agree," and Plaintiff again asked for his daughter. (*Id*. at 195:21-24). According to Plaintiff, Officer Duckworth told him to wait outside while he went to get Plaintiff's daughter. (*Id*. at 196:4-7).

Plaintiff waited outside for approximately 40 minutes, but Officer Duckworth did not return. (*Id*. at 198:16-199:6, 203:13-15). Plaintiff had his cellular telephone with him. (*Id*. at 260:15-17). He walked back into the School building and asked the secretary to contact Officer Duckworth about retrieving Plaintiff's daughter. (*Id*. at 204:3-12). The School secretary informed Officer Duckworth that Plaintiff was in the lobby and requested that Officer Duckworth return to the area. (ECF No. 191-6, *Declaration of Officer David Duckworth*, at ¶ 11). Officer Duckworth did so, and observed Plaintiff inside the building lobby. (*Id*. at ¶ 12). An argument ensued between Plaintiff and Officer Duckworth, following which Officer Duckworth arrested Plaintiff for "trespass on school grounds after warning." (ECF No. 190-3 at 205:20-22, 206:16-17; ECF No. 196-2, *Arrest Affidavit*, at 35). According to the arrest affidavit, Officer Duckworth "spoke with several staff members from the K through 2 building as well as the high school and they all advised that [Plaintiff] continuously caused problems with his presence." (ECF No. 196-2 at 36).

Plaintiff was transported to a local jail and released the next day. (ECF No. 190-3 at 267:3-7). The Miami-Dade County State Attorney's Office filed an Information against Plaintiff that charged him with trespass on school grounds after warning. (ECF No. 191-9,

*Information*). The State Attorney's Office dismissed the trespass charge prior to trial. (ECF No. 196-3 at 33).

### D.  This Action

A few days after his arrest, Plaintiff submitted a citizen's complaint to the Homestead Police Department. (ECF No. 194-2 at 71-81). Plaintiff requested "intervention to investigate a false report and trespass warrant issuance" and requested the "police to solicit or subpoena videotape evidence from Keys Gate Elementary School video surveillance system for criminal activity and investigation." (ECF 194-2 at 71). Plaintiff later filed what he titled two "internal investigation complaints" with the Homestead Police Department, in February and March 2017, requesting "internal investigation and intervention of a false report, false arrest, false imprisonment and malicious prosecution with regard to trespass warrant issuance," (*id*. at 55-70), and an "internal investigation to solicit or subpoena videotape surveillance from Keys Gate Elementary School video surveillance system for criminal activity and investigation," (*id*. at 55).

In September 2018, Plaintiff filed a complaint in Miami-Dade County Circuit Court against Charter Schools USA, Inc. and Homestead Police Department for defamation, slander, libel, malicious prosecution and false imprisonment. (ECF No. 1-1). Homestead Police Department timely removed the action to this Court. (ECF No. 1). The operative pleading is Plaintiff's Second Amended Complaint, which raises claims against the City of Homestead and Homestead Police Department (the "Homestead Defendants") and Charter Schools USA, Inc. and Keys Gate Charter School (the "School Defendants") as follows: (i) defamation (against School Defendants), (ii) false imprisonment (against all

Defendants), (iii) malicious prosecution (against all Defendants), (iv) false arrest (against Homestead Defendants), (v) false imprisonment of a child (against all Defendants), (vi) violation of 42 U.S.C. § 1983 (against Homestead Defendants), (vii) spoliation of evidence (against School Defendants), and (viii) "administrative" breach of contract (against School Defendants). (ECF No. 112). Homestead Defendants and School Defendants each filed a motion for summary judgment, contending that they are entitled to judgment as a matter of law on all claims raised against them. (ECF Nos. 190, 192). I evaluate the merits of both motions below.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is 'genuine' when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof." *See Picardat v. City of Miami*, No. 15-cv-24305-GAYLES, 2017 WL 1251897 at * 1 (S.D. Fla. April 5, 2017) (citing *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)). A "material" fact is one that, under the applicable law, might affect the outcome of the case. *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48

(1986) (emphasis in original). A genuine dispute of material fact exists "when there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Jessup v. Miami-Dade County*, 440 Fed. App'x. 689, 691 (11th Cir. 2011) (quotation marks and citation omitted).

When the nonmoving party bears the burden of proof at trial, the moving party can show either "that there is an absence of evidence to support the nonmoving party's case" or support its motion "with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citation omitted). "If the moving party shows the absence of a triable issue by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Id.* at 1438 (citations omitted). "If the nonmoving party fails to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof, the moving party is entitled to summary judgment." *Id.* (quotation marks and citation omitted).

The Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the nonmoving party. *Ray v. Equifax Information Services, LLC*, 327 Fed. App'x 819, 825 (11th Cir. 2009). In order to defeat summary judgment, "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 825, and "must offer more than a mere scintilla of evidence for its position...." *Picardat v. City of Miami*, 2017 WL 1251897 at *1 (citation omitted). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no

9

genuine issue of material fact and summary judgment will be granted." *Sada v. City of Altamonte Springs*, 434 Fed. App'x 845, 847 (11th Cir. 2011) (citation omitted).

Plaintiff is held to these requirements even though he is not represented by counsel. "Although *pro se* filings must be liberally construed, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue of fact material to his case in order to avert summary judgment." *Picardat*, 2017 WL 1251897 at *2 (quotation marks and citations omitted).

With these requirements in mind, I turn to the Motions for Summary Judgment.

## B.   Defendants Homestead Police Department and Charter Schools USA, Inc. Cannot Be Liable as a Matter of Law

Homestead Police Department is not a proper party. The Eleventh Circuit has long recognized that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citations omitted); *see also* Fed. R. Civ. P. 17(b). It is well-established under Florida law that a police department lacks the legal capacity to be sued. *See Fla. City Police Dep't v. Corcoran*, 661 So.2d 409, 410 (Fla. 3d DCA 1995) (dismissing action against police department because "[t]he City correctly asserts that the Florida City Police Department is not a proper defendant in a suit for damages because the Police Department does not have the capacity to sue and be sued.").

Similarly, there is no evidence that Charter Schools USA, Inc. is a proper party. The record reflects that a different entity, Charter Schools USA at Keys Gate, LLC ("CSU-

KG"), managed the School pursuant to a Management Agreement Renewal with the Florida Charter Educational Foundation, the entity that operates the School. (ECF No. 190-2). The Management Agreement Renewal provides that School personnel are employees of CSU-KG. (*Id.* at p. 13, Art. VI).

Plaintiff's tort claims against School Defendants are based on a theory that Charter Schools USA, Inc. is vicariously liable for the acts of employees at Keys Gate Charter School, and his breach of contract claim is based on the Keys Gate Charter School's "Governance policy." (ECF No. 112 at ¶¶ 26, 31, 36, 57, Count XI). However, Plaintiff did not submit any evidence to establish that Charter Schools USA, Inc. controlled Keys Gate Charter School or employed Vice Principal Thermes, Mr. Hull or Ms. Shears, the individuals involved in the September 2016 incidents. (ECF No. 190 at 3-4). Nor has Plaintiff provided any basis to disregard the corporate status of CSU-KG as a separate entity. Tellingly, the "Governance" policy that Plaintiff relies upon makes no mention of Charter Schools USA, Inc. (ECF No. 196-2 at 4-5).

It is well-settled law that "[c]orporations are separate legal entities, and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns the stock of the other corporation." *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir. 2003) (citations omitted).  In sum, there is no evidence from which a reasonable finder of fact could conclude that Charter Schools USA, Inc. is liable for the events at the School in September 2016.

In sum, Homestead Police Department and Charter Schools USA, Inc. are entitled to judgment as a matter of law on all claims raised against them. Specifically, I recommend

11

that the Court enter judgment in favor of Homestead Police Department on Counts IV, V, VI, VIII and IX of the Second Amended Complaint, and in favor of Charter Schools USA, Inc. on Counts I, II, III, VII, X and XI of the Second Amended Complaint.

In addition, as I explain below, Plaintiff's claims against defendants City of Homestead and Keys Gate Charter School also fail as a matter of law, and the reasons for that equally apply to Homestead Police Department and Charter School USA. For the sake of completeness, I include these Defendants in the analysis below.

### C.   All Defendants Are Entitled to Summary Judgment on Plaintiff's State Law Claims Based Upon Sovereign Immunity

"Florida's doctrine of sovereign immunity prohibits a lawsuit against the state or one of its agencies or subdivisions without the government's consent." *Doe v. G-Star School of the Arts, Inc.*, No. 16-cv-80446, 2016 WL 4625625 at *4 (S.D. Fla. Sept. 6, 2016) (citations omitted). Florida has codified a limited waiver of sovereign immunity, which requires that notice be provided to the state agency and, unless the claim is against a municipality or the Florida Space Authority, to the Department of Financial Services, within three years after the claim accrues. Fla. Stat. § 768.28(6)(a) (2019).[4] The Florida

---

[4] Section 768.28(6)(a) provides in pertinent part that:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing…

Supreme Court has found that this presuit notice requirement is mandatory. *Levine v. Dade Cnty. Sch. Bd.,* 442 So.2d 210, 213 (Fla.1983).

Homestead Defendants are agencies or subdivisions of the State of Florida that are entitled to sovereign immunity unless waived. *See* Fla. Stat. § 768.28(2) ("As used in this act, 'state agencies or subdivisions' include…counties and municipalities…"); *In re Venable*, 280 B.R. 916, 923 (Bankr. M.D. Fla. 2002) ("The Florida Supreme Court has consistently recognized that counties and municipalities and their agents are entitled to sovereign immunity protection.") (citations omitted).

The same is true of School Defendants. Florida Statutes section 1002.33 provides that "[a]ll charter schools in Florida are public schools and shall be part of the state's program of public education." Fla. Stat. § 1002.33(1). It further instructs that "[f]or the purposes of tort liability, the charter school, including its governing body and employees, shall be governed by s. 768.28."[5] Fla. Stat. § 1002.33(12)(h). Another division of this Court recently examined the applicability of sovereign immunity to a charter school and concluded that presuit notice under § 768.28 was required where the plaintiff alleged that the defendant "controls the performance and day-to-day operations of the [s]chool." *Doe*, 2016 WL 4625625 at *4-5. Plaintiff makes the same allegation here.  (ECF No. 112 at ¶ 4) ("At all material times hereto, Defendants KEYS GATE CHARTER SCHOOL AND CHARTER SCHOOLS USA, INC. owned, operated, and otherwise controlled the Keys Gate Charter School located at 200 SE 28th Avenue, Homestead, Florida 33035.").

---

[5] Plaintiff does not dispute that Keys Gate is a charter school.

Courts must strictly construe legislative waivers of sovereign immunity. *Wilson v. City of Tampa*, 209 So.3d 646, 648 (Fla. 2d DCA 2017). And, Florida courts have found that strict compliance with the statutory notice provision of section 768.28(6)(a) requires that the claim be in writing, and that it assert a claim for compensation. *Id.* at 649; *see also Smart v. Monge*, 667 So.2d 957, 959 (2d DCA 1996) ("at a minimum, the written notification must contain language notifying the agency of a claim; that is, a demand for compensation for an injury.") (citation omitted).

1.    <u>School Defendants</u>

There is no evidence in the record that Plaintiff submitted a written claim to School Defendants or the Department of Financial Services before filing suit, as required by Fla. Stat. § 768.28(6)(a). The time to do so has closed, as more than three years have passed since the September 2016 events that gave rise to this lawsuit. For this reason, summary judgment in favor of School Defendants is warranted. *See Catogas v. Vetter*, No. 12-62025-CIV, 2013 WL 1334569 at \*2 (S.D. Fla. March 29, 2013) ("Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.") (citation omitted).

2.    <u>Homestead Defendants</u>

Plaintiff did submit a written "citizen complaint" and two written "internal investigation complaint[s]" to the Homestead Police Department in 2016 and 2017. (ECF No. 194-2 at 55-81). However, these complaints do not satisfy the presuit notice requirement of § 768.28(6)(a). The February 2017 complaint makes no mention of Officer

Duckworth or any officer from the Homestead Police Department.[6] (ECF No. 194-2 at 55-61). Instead, it focuses entirely on the alleged conduct of Vice Principal Thermes and Ms. Shears in connection with the dismissal incident that occurred on September 6, 2016. (*Id*). Thus, it gives no hint that Plaintiff had a claim against the Homestead Defendants. The March 2017 complaint does focus on Officer Duckworth's alleged misconduct leading up to and during Plaintiff's arrest, however, it does not identify any claim that Plaintiff intended to bring against the police department, nor does it demand any compensation from it. (*Id*. at 62-70)

Rather, Plaintiff asks the Homestead Police Department to conduct an "internal investigation" into "a false report, false arrest, false imprisonment and malicious prosecution with regard to a trespass warrant issuance," (*id*. at pp. 55, 62), and to "solicit or subpoena video tape evidence from Keys Gate Elementary School…." (*Id*. at 55). Again, to satisfy § 768.28(6)(a), "[t]he notice must advise the department that a claim is made against a state agency or subdivision." *LaRiviere v. South Broward Hosp.Dist.*, 889 So.2d 972, 974 (Fla. 4th DCA 2004). Plaintiff's 2017 complaints do not do this. Rather, they explicitly seek the assistance of the Homestead Police Department, rather than threaten to bring a claim against it.

The "citizen complaint" Plaintiff filed with the Homestead Police Department in 2016 presents a closer question. It focuses on Officer Duckworth's alleged conduct. (ECF

---

[6] The document is dated February <u>2016</u>, (ECF No. 194-2 at 55), which must be a typographical error because the events Plaintiff complains about did not occur until seven months later, in September 2016.

No. 194-2 at 71-81). But unlike Plaintiff's later complaints, it asserts that Officer Duckworth is "culpable" of "malicious prosecution, false arrest, false imprisonment, civil rights violations with regard to the 4th amendment and entrapment." (*Id*. at 80). Plaintiff, though, does not threaten suit against the Homestead Police Department and, instead, requests "police action and intervention to investigate a false report and trespass warrant issuance" and requests "police to solicit or subpoena video tape evidence from Keys Gate Elementary School video surveillance system for criminal activity and investigation." (*Id*. at 71). Plaintiff makes no demand for compensation, nor does he claim that he suffered any physical or emotional injury as a result of the conduct described in the complaint.

Plaintiff's "citizen complaint" focuses on the pending criminal action and anticipated internal affairs investigation. He states, "I wanted [to] ask if in the court procedure if we have the right to object too or have the police officers report, statement and testimony suppressed entirely or partially." (*Id*. at 72). He directs portions of his complaint to "Attorney Emily Sawyer" and "Internal Affairs," stating "I wanted to relate to you several facts that might be relevant to the case when you cross examine the two witnesses Robert Hull and the arresting police officer." (*Id*. at 194-2 at 74, 78). The only case pending at the time of Plaintiff's 2016 complaint was the criminal prosecution. (ECF No. 191-10).

Mindful that the Court must narrowly construe waivers of sovereign immunity, I conclude that Plaintiff's 2016 complaint is not a written claim within the meaning of

section 768.28(6)(a).[7] *See, Catogas*, 2013 WL 1334569 at *2 ("official complaint" that *pro se* plaintiff submitted to municipality "did not constitute notice sufficient to satisfy Fla. Stat. § 768.28(6)" because it "makes no mention of anticipated suit against the City; contains [n]o language notifying the City of a claim; and demands no compensation."); *Smart*, 667 So. 2d at 959 (demand letter that mentioned incident but only requested documents and did not discuss whether a claim would be filed was insufficient to satisfy § 768.28(6)); *contrast Brower v. State Dept. of Natural Res.*, 698 So.2d 568, 570-71 (Fla. 2d DCA 1997) (although letter "was not a model of how to give notice of a claim to a state agency" it "met the minimum requirements" of § 768.28(6)(a) because it identified plaintiff as the "claimant," and advised the appropriate agency of "the occurrence of [plaintiff's] injuries and of his 'claim therefor'."); *Gordon v. Beary*, No. 6:08-cv-73-Orl-19KRS, 2008 WL 3258496 at *11-12 (M.D. Fla. Aug. 6, 2008) (letter satisfied presuit notice requirement where it stated that "Claimant…is filing a claim against the above-referenced entities concerning the incidents relating to his wife…on or around January 14, 2004 and or around June of 2004, in Orange County, Florida of mental and emotional distress. [Plaintiff's] claim will be asking for all compensatory damages, including special damages and punitive

---

[7] It is noteworthy that Homestead Defendants served Plaintiff with a request for production that sought "[a]ll documents reflecting compliance with Fla. Stat. § 768.28 including without limitation, notice letters to the Defendant(s) and the Dept. of Insurance, and records relating to Fla. Stat. § 768.28(6)," (ECF No. 191-13 at p. 6, ¶ 18), to which Plaintiff responded only with the phrase "Florida Statute 768.28." (ECF No. 191-14 at p. 3, ¶ 18). By contrast, in his responses to other discovery requests, Plaintiff identified responsive documents. (ECF No. 191-14, *generally*). Plaintiff plainly knew how to produce responsive documents if he had them, and his failure to do so when asked for presuit notice letters supports the conclusion that Plaintiff's complaints do not constitute written notice of a claim under section 768.28(6).

damages."); *Smart*, 667 So. 2d at 959 (noting that letter stating plaintiff "intends to file a Tort Claims Action for money damages against the Florida Department of Corrections and Sarasota County under the Florida Tort Claims Act, Section 768.28, Florida Statutes 1991," would have satisfied § 768.28(6) had plaintiff submitted it to the correct agency). Because Plaintiff failed to submit a written claim to Homestead Defendants before filing suit, as required by Fla. Stat. § 768.28(6)(a), and the time to do so has expired, Homestead Defendants are entitled to judgment as a matter of law on Plaintiff's state law claims against them.

In sum, there is no genuine dispute of material fact that Plaintiff has not and cannot comply with Florida Statutes § 768.28(6)(a). Accordingly, Defendants are entitled to summary judgment on all state law claims because they have not waived sovereign immunity.

### D.    Homestead Defendants are Entitled to Summary Judgment on Plaintiff's 42 U.S.C. § 1983 Claim

Count IX of the Second Amended Complaint is a claim under 42 U.S.C. § 1983 that Homestead Defendants are "vicariously liable under the doctrine of respondeat superior for the conduct of Officer Duckworth" when he allegedly falsely imprisoned and falsely arrested Plaintiff on September 23, 2016. (ECF No. 112 at ¶ 64). The United States Supreme Court in *Monell v. Department of Social Services of City of New York* made clear that a municipality may not be liable under theories of vicarious liability or respondeat superior for constitutional violations under section 1983. *Monell*, 436 U.S. 658, 694 (1978) ("we conclude that a municipality cannot be held liable *solely* because it employs a

tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (emphasis in original). For this reason alone, Homestead Defendants are entitled to summary judgment on Count IX.

A municipality may be sued under section 1983, however, if "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.* at 690. A plaintiff can demonstrate that a municipality has such a policy by identifying "an officially promulgated" city policy or "an unofficial custom or practice" of the city established "through the repeated acts of a final policymaker" for the city. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). A "custom consists of those practices of city official that are so permanent and well settled as to have the force of law." *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 902 (11th Cir. 1984) (quotation marks and citation omitted). A plaintiff must also show that "the custom or practice is the moving force behind the constitutional violation." *Martin v. City of Macon, Ga.*, 702 Fed. App'x 941, 943 (11th Cir. 2017) (quotation marks and citation omitted). Importantly, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808 at 823-24 (1985).

Plaintiff has not identified any policy, custom or practice of Homestead Defendants that he contends is unconstitutional, nor has he submitted evidence that such a policy, custom or practice exists. Indeed, Plaintiff testified that he does not "take issue" with any

policies of the Homestead Police Department concerning the arrest of individuals, and that he is not familiar with such policies. (ECF No. 190-3 at 271:3-11). Plaintiff also testified that he is not aware of any other similar incidents involving the Homestead Police Department. (*Id*. at 270:3-24). In sum, Plaintiff has not provided sufficient evidence to support a finding that there is a genuine issue of material fact that Homestead Defendants had a policy, custom or practice which deprived Plaintiff of constitutional rights. Homestead Defendants are entitled to judgement as a matter of law on Count IX of the Second Amended Complaint because no reasonable jury could find that they are liable to Plaintiff for a violation of section 1983.

### E.      Plaintiff's State Law Claims Fail on the Merits

As already noted, Defendants are entitled to summary judgment on Plaintiff's state law claims based upon sovereign immunity. In addition, those claims fail on the merits as explained below, which provide further grounds to grant summary judgment to Defendants.

#### 1.      All Defendants are Entitled to Summary Judgment on Plaintiff's False Imprisonment Claims

Plaintiff has asserted a claim for false imprisonment against School Defendants and Homestead Defendants (Counts II and IV), alleging that they falsely imprisoned him in the School conference room on September 23, 2016. (ECF No. 112 at ¶¶ 31, 39). He also asserts a claim against all Defendants for false imprisonment of a child. (*Id*. at Counts VII, VIII). As against School Defendants, Plaintiff alleges that Vice Principal Thermes and Ms. Shears falsely imprisoned Plaintiff's daughter in the School cafeteria on September 6, 2016 when they "den[ied] him immediate possession" after school had recessed for the day. (*Id*.

at ¶ 57). As against Homestead Defendants, Plaintiff alleges that Officer Duckworth falsely imprisoned Plaintiff's daughter in the elementary school building because Officer Duckworth "deliberately (delayed) and refused to retrieve" Plaintiff's daughter on September 23, 2016 after he requested custody. (*Id.* at ¶ 61). I examine each of these claims in turn.

To begin, Plaintiff brings his claims for false imprisonment under Florida Statutes § 787.02. (ECF No. 112 at Counts II, IV). This is a criminal statute that does not give rise to a private cause of action. Given Plaintiff's *pro se* status, the Court will construe his claims as based upon the Florida common law tort of false imprisonment.

The tort of false imprisonment is defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Escambia County School Bd. v. Bragg*, 680 So.2d 571, 572 (Fla. 1st DCA 1996) (citations omitted). A plaintiff "need not show that force was used in the detention or that he or she orally protested to demonstrate the detention was against his or her will." *Ali v. Margate School of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372 at *5 (S.D. Fla. Oct. 3, 2011) (citation omitted). The plaintiff must, however, show that the restraint "was unreasonable and unwarranted under the circumstances." *Id.* (citation omitted). "A plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person." *Id.* (citation omitted).

a.      False Imprisonment of Plaintiff

As mentioned above, Plaintiff contends that Defendants falsely imprisoned him in the School conference room. It is undisputed that Plaintiff voluntarily accompanied Mr.

Hull to the conference room and, although Mr. Hull closed the door, neither Mr. Hull nor Officer Duckworth told Plaintiff that he could not leave the conference room or denied him permission to leave. (ECF No. 190-3 at 241:4-6, 252:19-253:6; ECF No. 195, 197 at ¶ 10). Rather than detaining him, Plaintiff understood that both men were instructing Plaintiff to *leave* the School premises. (*Id*. at 253:8-11). Also, neither Mr. Hull nor Officer Duckworth exhibited any force towards Plaintiff while in the conference room. (ECF No. 190-3 at 245:7-13).

Notably, another division of this court granted summary judgment to the defendant on similar facts. In *Ali v. Margate School of Beauty, Inc.*, a former student alleged that she was falsely imprisoned in the office of the school's owner. *Ali*, 2011 WL 4625372. The *Ali* Court found that

> Plaintiff Ali has failed to show that any restraint was used in that she agreed to go with [owner] into his office and she could have left his office at any time…Although the door to the office was closed while Plaintiff was inside the office with [the owner], and Plaintiff was subjectively afraid of the consequences of her leaving, a reasonable means of escape was apparent.

*Id*. at *5. The *Ali* Court concluded that "Plaintiff has failed to prove as a matter of law that the tort of false imprisonment was committed." *Id*.

As in *Ali*, no reasonable juror could find that Plaintiff was restrained against his will in the conference room and Defendants are thus entitled to summary judgment. Homestead Defendants are entitled to summary judgment for the additional reason that they cannot be liable for the conduct of Officer Duckworth because Plaintiff alleges that Officer Duckworth acted in malice when he allegedly detained Plaintiff in the conference room.

(ECF No. 112 at ¶ 39). Florida Statutes § 768.28(9)(a) provides that "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent…committed in bad faith or with malicious purpose…." Fla. Stat. § 768.28(9)(a) (2019).

For these reasons, I conclude that the Court should enter judgment in favor of School Defendants on Count II of the Second Amended Complaint, and in favor of Homestead Defendants on Count IV of the Second Amended Complaint.

b.    False Imprisonment of Plaintiff's Daughter

Plaintiff claims that School Defendants falsely imprisoned Plaintiff's minor daughter in the cafeteria on September 6, 2016 when Vice Principal Thermes and Ms. Shears told Plaintiff that he had to wait an extra 15 minutes, until 4:00 p.m., to pick up his daughter. Plaintiff also claims that all Defendants falsely imprisoned his daughter in her classroom on September 23, 2016 when neither Mr. Hull nor Officer Duckworth brought her to him after he asked them to do so.

As an initial matter, Plaintiff lacks standing to bring these claims. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiff has sued in his individual capacity, not as representative for or on behalf of his daughter, and seeks damages only for himself. (ECF No. 112 at ¶ 2, Counts VII and VIII at "Wherefore" clause). He does not allege, much

less provide evidence, that his daughter suffered any injury as a result of the alleged false imprisonment.[8] Instead, Plaintiff asserts that the alleged false imprisonment of his daughter "created adverse and hostile set of complicated circumstances concerning the trespass warrant and falsely arrested the plaintiff…." (*Id*. at ¶¶ 57, 61). To be clear, Plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 501; *see also Wilkie v. Roberts*, 91 Fla. 1064, 1069 (Fla. 1926) ("For the personal injury [and] pain…of a child inflicted by a tort committed on it, the father can recover no damages….").

Plaintiff's claims also do not survive on the merits. With respect to Homestead Defendants, there is no evidence that Officer Duckworth detained Plaintiff's daughter. Plaintiff claims that his daughter was falsely imprisoned in her classroom, but has not submitted any evidence from which a reasonable jury can conclude that Officer Duckworth is the person who detained her. Officer Duckworth was an employee of the Homestead Police Department, not the School, (ECF No. 191-6 at ¶ 2), and there is no evidence that he had any interaction with Plaintiff's daughter, much less forced her to remain in her classroom. With respect to School Defendants, even assuming that Vice Principal Thermes, Ms. Shears and Mr. Hull detained Plaintiff's daughter in the cafeteria or classroom, Plaintiff has not submitted evidence from which a reasonable jury could conclude that his daughter's alleged restraint "was unreasonable and unwarranted under the circumstances." *Ali*, 2011 WL 4625372 at *5.

---

[8] There is no indication that Plaintiff's daughter suffered any injury. In fact, there is no evidence she was even aware at the time that her father had asked to pick her up.

For the foregoing reasons, I conclude that Defendants are entitled to summary judgment on Counts VII and VIII of the Second Amended Complaint.

      2.    <u>Homestead Defendants are Entitled to Summary Judgment on Plaintiff's False Arrest Claim</u>

Plaintiff has asserted a claim for false arrest against Homestead Defendants based upon Officer Duckworth's arrest of Plaintiff on September 23, 2016. (ECF No. 112 at Count VI). As with his claim for false imprisonment, Plaintiff relies upon the same criminal statute, section 787.02, which is inapplicable to this civil action. As before, in light of Plaintiff's *pro se* status, the Court will construe his claim as one for false arrest under Florida common law.

In Florida, the tort of false arrest has the same elements as false imprisonment: "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Escambia County School Bd.*, 680 at 572. Officer Duckworth arrested Plaintiff for "trespass on school grounds after warning" in violation of Florida Statutes § 810.097(2). (ECF No. 196-2 at 35). That statute provides that "[a]ny person who enters or remains upon the campus or other facility of a school after the principal of such school, or his or her designee, has directed such person to leave such campus or facility or not to enter upon the campus or facility, commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the first degree…." Fla. Stat. § 810.097(2).

Probable cause "is a complete bar to an action for false arrest and false imprisonment." *Bolanos v. Metropolitan Dade County*, 677 So.2d 1005 (Fla. 3d DCA 1996) (citations omitted).[9] Probable cause to arrest exists when

> law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime. This does not require an actual showing of criminal activity, but only a probability or substantial chance of criminal activity. And it does not require overwhelmingly convincing evidence, but only reasonably trustworthy information.

*Baysa v. Gualtieri*, No. 18-14867, 2019 WL 4447536 at *3 (11th Cir. Sept. 17, 2019) (quotation marks and citations omitted).[10] The standard is an objective one; the officer's subjective belief "plays no role in a probable cause analysis under Florida or federal law." *Sada v. City of Altamonte Springs*, 434 Fed. App'x 845, 849 (11th Cir. 2011).

It is undisputed that Officer Duckworth knew Plaintiff received a trespass notice, signed by the School's Director of Student Services, informing Plaintiff that he is "no longer permitted on the grounds of Keys Gate Charter School," (ECF No. 191-5), and that Plaintiff was told he "was being trespassed" and was not allowed on the school premises anymore. (ECF No. 190-3 at 194:5-22; 242:3-7; ECF No. 191-6 at ¶¶ 6, 9). It is also undisputed that Officer Duckworth knew that Plaintiff returned to the School lobby after leaving the premises, despite having received the trespass notice. (ECF No. 190-3 at 204:3-

---

[9] Homestead Defendants have raised probable cause as an affirmative defense. (ECF No. 126 at p. 7, First Affirmative Defense).

[10] The standard for determining the existence of probable cause is the same under federal and Florida law. *Amanieh v. Maura*, No. 16-cv-61813, 2017 WL 1953421 at *5 (S.D. Fla. May 11, 2017).

12; ECF No. 191-6 at ¶¶ 11-12). These undisputed facts establish that, based on the information known to Officer Duckworth, he had probable cause to arrest Plaintiff for trespassing on school grounds after warning.

As noted, the criminal charges were dismissed against Plaintiff. (ECF No. 194-2 at p. 107; ECF No. 196-3 at 33). However, "[t]hat a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990); *see also Arrington v. Kinsey*, 512 Fed. App'x 956, 960 (11th Cir. 2013) ("The ultimate release of charges, however, is of no significance in the probable cause analysis.").

Plaintiff argues that probable cause did not exist because Officer Duckworth agreed to bring Plaintiff his daughter, and thereby consented to Plaintiff remaining on the grounds of the School. (ECF No. 194 at 15). Even if Officer Duckworth did agree to retrieve Plaintiff's daughter, that does not constitute consent to Plaintiff later entering a School building. It is undisputed that Officer Duckworth spoke with Plaintiff outside a School building, and according to Plaintiff, told Plaintiff to "wait right here" while he went to retrieve Plaintiff's daughter. (ECF No. 190-3 at 196:4-7). At most, such agreement meant that Plaintiff could remain outside the School to wait for his daughter. Officer Duckworth did not arrest Plaintiff for waiting outside the School. He arrested Plaintiff for re-entering a School building.[11]

In sum, the undisputed facts establish that probable cause existed to arrest Plaintiff

---

[11] Plaintiff had a cellular telephone with him, (ECF No. 190-3 at 260:15-17), and could have called the School about the delay in retrieving his daughter.

for trespassing on school grounds after warning and, therefore, no reasonable jury could find that Homestead Defendants are liable for false arrest. Homestead Defendants also cannot be liable because Plaintiff alleges that Officer Duckworth acted in malice. (ECF No. 112 at ¶ 51). *See* Fla. Stat. § 768.28(9)(a) ("The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent…committed in bad faith or with malicious purpose…."). For the foregoing reasons, summary judgment is warranted in favor of Homestead Defendants on Count VI of the Second Amended Complaint.

### 3. All Defendants are Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim

Plaintiff has asserted a claim under Florida law for malicious prosecution against School Defendants and Homestead Defendants. (ECF No. 112 at Counts III, V). Plaintiff alleges that Vice Principal Thermes and Mr. Hull "falsely reprimanded and disciplined [Plainitff] for 'disruptive behavior' that consequently resulted in disciplinary action by school administration, tarnished reputation and an eventual arrest and incarceration." (*Id.* at ¶ 37). As against Homestead Defendants, Plaintiff alleges that his arrest "was motivated by Officer Duckworth's malicious prosecution." (*Id.* at ¶ 46). There are several reasons why these claims fail as a matter of law.

First, "[i]t is clear that, under Florida law, [p]laintiffs may not bring suit against a municipality for malicious prosecution." *Killmon v. City of Miami*, No. 04-20707-CIV, 2006 WL 8433272 at *17 (S.D. Fla. Feb. 1, 2006). The same is true for School Defendants because Florida Statutes "[s]ection 768.28(9)(a) bars an action for malicious prosecution

against the state or its subdivisions arising from the malicious acts of their employees[,]" and "[m]alice is not only an essential element of malicious prosecution; it is the gist of such a cause of action." *Johnson v. State Dept. of Health and Rehabilitative Servs.*, 695 So.2d 927, 930 (Fla. 2d DCA 1997) (citations omitted).

Second, the malicious prosecution claim fails because there was probable cause to arrest Plaintiff, as explained *supra*. "In order to establish a cause of action for malicious prosecution under Florida law, the [p]laintiff must establish that: 1) an original civil or criminal judicial proceeding against the plaintiff was commenced or continued; 2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; 3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; 4) there was an *absence of probable cause* for the original proceeding; 5) there was malice on the part of the present defendant; and 6) the present plaintiff suffered damages as a result of the original proceeding." *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F.Supp.2d 1318, 1320 (M.D. Fla. 2009) (citations omitted) (emphasis added). Because Plaintiff's arrest was supported by probable cause, he cannot establish a required element of his malicious prosecution claim.

Third, Plaintiff has not identified what "civil or criminal proceeding" School Defendants caused to be commenced against him. Plaintiff alleges that Vice Principal Thermes and Mr. Hull caused "disciplinary action by school administration," but that is not a criminal or civil proceeding. (ECF No. 112 at ¶ 37). Plaintiff also alleges that their actions resulted in his "eventual arrest and incarceration." (*Id*.). The Court construes this

allegation to mean the criminal proceeding that the State Attorney's office filed against him.

However, there is no record evidence from which a reasonable jury can conclude that School Defendants were the "legal cause" of that proceeding. The State's Attorney initiated the prosecution, and there is no evidence that School Defendants had any involvement in her decision. Notably, Plaintiff was not prosecuted for his conduct on September 6, 2016 when he disagreed with Vice Principal Thermes or Ms. Shears regarding dismissal procedures. Nor was he prosecuted for the conduct that resulted in Mr. Hull's issuance of the trespass letter. Plaintiff was prosecuted because he chose to enter a school building after receiving the trespass warning.[12] Given Plaintiff's inability to establish that School Defendants were the legal cause of a criminal or civil proceeding against him, no reasonable jury could hold them liable for malicious prosecution.

For the foregoing reasons, I conclude that the undisputed facts establish that School Defendants and Homestead Defendants are entitled to judgment as a matter of law on Counts III and V of the Second Amended Complaint.

    4.    <u>School Defendants are Entitled to Summary Judgment on Plaintiff's Spoliation of Evidence Claim</u>

Plaintiff brings a claim against School Defendants for spoliation of evidence,[13] alleging that School Defendants and Homestead Defendants failed to preserve "the video

---

[12] Even if Mr. Hull agreed to bring Plaintiff his daughter, that did not require Plaintiff to re-enter the School because Plaintiff could have used his cellular telephone to inquire about her status.

[13] Although Plaintiff refers to Homestead Defendants in the Count, he does not seek any relief against them. (ECF No. 112 at Count X) ("WHEREFORE, Plaintiff…sues Defendant KEYS GATE CHARTER SCHOOL AND CHARTER SCHOOLS USA, NC (sic) [f]or an amount with

tape surveillance of the alleged criminal trespass and arrest on September 23, 2016 and the alleged 'disruptive behavior' on September 6, 2016…." (ECF No. 112 at Count X, p. 22). This is a claim for "first-party" spoliation of evidence because "the defendant who allegedly lost, misplaced, or destroyed the evidence was also a tortfeasor in causing the plaintiff's injuries or damages." *Martino v. Wal-Mart Stores, Inc.*, 908 So.2d 342, 345 n.2 (Fla. 2005). The Florida Supreme Court has ruled that no independent cause of action exists for first-party spoliation of evidence. *Id*. at 347. Accordingly, School Defendants are entitled to summary judgment on Count X of the Second Amended Complaint.

5.  School Defendants are Entitled to Summary Judgment on Plaintiff's Claim for Administrative Breach of Contract

Plaintiff has brought a claim against School Defendants for "Administrative Breach of Contract," alleging that School Defendants breached the Keys Gate Charter School Parent/Student Handbook (the "Handbook") and the Keys Gate Charter School Governance Policy" (the "Policy") because school personnel refused to allow him to meet with Principal Baez to discuss drop off and pick up procedures. (ECF No. 112 at Count XI). According to Plaintiff, the Policy is set forth in the "governance" tab of the School's website, which states:

**Parent Grievance Procedure**

If a parent has a grievance or complaint, please follow the process below:

1.  Seek to resolve the problem with the teacher, if applicable.

---

the jurisdiction of this Honorable Court…." (emphasis in original). And, even if Plaintiff did seek relief against Homestead Defendants, they would be entitled to summary judgment for the same reasons as School Defendants.

2.  If problem is not resolved, meet with school administration via an appointment.

3.  If still unresolved, please contact School Support, CSUSA at 954-202-3500.

(ECF No. 196-2 at 5).

The Handbook states in pertinent part:

### GRIEVANCE PROCEDURE

If a student or his/her parents feel they have a grievance or complaint they should do the following:

1.  Carefully analyze the problem – be sure you have ALL the FACTS.

2.  Ascertain that you have a rational attitude about the problem.

3.  Seek to resolve the problem with the teacher if applicable.

4.  If there is no solution, meet with the School Administration.

5.  If left unresolved, you should contact CSUSA at 954-202-3500

(ECF No. 190-4 at 22) (emphasis in original).

Under Florida law, a plaintiff must prove the following elements to establish a claim for breach of contract: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *In re Electric Machinery Enter., Inc.*, 416 B.R. 801, 875 (Bankr. M.D. 2009) (citations omitted). For purposes of summary judgment, the Court assumes without deciding that the Policy and the Handbook constitute contracts. There is no evidence, however, that School Defendants breached those presumed contracts.

Neither the Policy nor the Handbook require the School principal to meet with an aggrieved parent. The Policy does identify Principal Baez as the "parent facilitator." (ECF No. 196-2 at 5). However, the Policy and Handbook do not require an aggrieved parent to

meet with the parent facilitator. Instead, they instruct parents to meet with "school administration," and do not identify particular individuals within the administration that must meet with the parent. Plaintiff would have the Court interpret the phrase "school administration" to mean the principal or parent facilitator. The Court cannot do so. "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *Snyder v. Florida Prepaid College Board*, 269 So.3d 586, 592 (Fla. 1st DCA 2019) (citations omitted).

Given that the governance policy and Handbook do not obligate the School principal to meet with an aggrieved parent, the failure of Principal Baez to meet with Plaintiff cannot constitute a breach of contract as a matter of law. Accordingly, the Court concludes that School Defendants are entitled to summary judgment on Count XI of the Second Amended Complaint.

>    6.    School Defendants are Entitled to Summary Judgment on Plaintiff's Defamation Claim

Plaintiff has brought a claim against School Defendants for defamation,[14] alleging that Vice Principal Thermes told other members of the School staff that Plaintiff was

---

[14] Plaintiff's claim is based upon Florida Statutes § 836.01, (ECF No. 112 at Count I), which is a criminal statute that does not give rise to a civil cause of action. *See* Fla. Stat. § 836.01 ("Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree…."); *Murthy v. N. Sinha Corp*, 644 So.2d 983, 986 (Fla. 1994) ("In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability.") (citations omitted). Once again, the Court gives Plaintiff the benefit of the doubt, and construes and analyzes Plaintiff's claim as one for common law defamation.

"violent," "disruptive," and "a threat" to students at the School. (ECF No. 112 at ¶ 26). The elements of defamation are: "(1) publication; (2) falsity; (3) [the] actor must act…at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008) (citation omitted). In his Response, Plaintiff narrows his claim by defending only his allegation that Vice Principal Thermes' called him "disruptive."[15] (ECF No. 196 at 3). Plaintiff contends that the Trespass Notice is evidence that Vice Principal Thermes told Mr. Hull that Plaintiff was disruptive because, therein, Mr. Hull refers to Plaintiff's "disruptive actions on September 6, 2016…." (*Id.*; ECF No. 191-5). The Trespass Notice makes no mention of Vice Principal Thermes, nor does it explain why Mr. Hull chose to characterize Plaintiff's actions as disruptive. (ECF No. 191-5).

Plaintiff merely assumes that Vice Principal Thermes told School staff that Plaintiff was "disruptive," but assumptions are not evidence. Indeed, Plaintiff does not offer any evidence of the specific defamatory statement(s) that Vice Principal Thermes allegedly made, or the circumstances under which she allegedly made them. Even if Plaintiff's assumption is correct, and Vice Principal Thermes did tell Mr. Hull or officers with the Homestead Police Department that Plaintiff was disruptive, such communications were protected by a qualified privilege.

---

[15] Plaintiff makes no argument, and provides no evidence, that Vice Principal Thermes stated that Plaintiff was violent or a threat to students, as alleged in the Second Amended Complaint. (ECF No. 196).

"A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable."[16] *Gunder's Auto Center v. State Farm Mut. Auto. Ins. Co.*, 422 Fed. App'x 819, 821 (11th Cir. 2011) (citations omitted). Vice Principal Thermes and Mr. Hull (or other School personnel) clearly have a mutual interest in the conduct of parents of students enrolled at the School, particularly when the parent's conduct occurred on School grounds. Similarly, "defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged." *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992).

There is a limitation on the privilege. It "raises a presumption of good faith on the part of the speaker" but "is forfeited if the statements are made with express malice." *Gunder's Auto Center*, 422 Fed. App'x at 821 (citation omitted); *Fridovich*, 598 So.2d at 69. To prove express malice, a plaintiff must establish by a preponderance of the evidence that "the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Fridovich*, 598 So.2d at 69 (citation omitted). Plaintiff has offered no evidence demonstrating that the *primary* motive of Vice Principal Thermes was to harm Plaintiff's reputation, as opposed to maintaining the orderly operation of the School. "[W]hile malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue." *Gunder's Auto Center*, 422 Fed. App'x at 821

---

[16] School Defendants raise this "mutual interest" privilege as an affirmative defense. (ECF No. 125 at ¶ 63).

(citations omitted). Importantly, "[a]s long as the communication is motivated by a desire to protect the interest giving rise to the privilege, the privilege is not forfeited merely because hostility or ill will are also felt by the speaker." *Id*. (citation omitted). Moreover, even if Plaintiff could prove express malice, that would defeat his claim because School Defendants cannot be liable for the actions of employees committed with malicious purpose. *See* Fla. Stat. § 768.28(9)(a).

For these reasons the Court concludes that, based upon the undisputed facts, no reasonable jury could find that School Defendants committed defamation as a matter of law.[17] Accordingly, summary judgment should be entered in favor of School Defendants on Count I of the Second Amended Complaint.

## III.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court concludes that Defendants are entitled to judgment as a matter of law on all claims raised in the Second Amended Complaint. Accordingly, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** School Defendants' Motion for Summary Judgment (ECF No. 190) and **GRANT** Homestead Defendants' Motion for Summary Judgment (ECF No. 192).

## IV.   OBJECTIONS

**No later than fourteen (14) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and

---

[17] School Defendants also argue that calling Plaintiff "disruptive" is not actionable defamation because it is an opinion, not a fact. (ECF No. 190 at 7). The Court need not reach this issue because summary judgment is warranted for the reasons set forth above.

Recommendation with the Honorable Darrin P. Gayles, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

       RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 14th day of January, 2020.

                                     CHRIS McALILEY
                                     UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Darrin P. Gayles
      Counsel of record
      Mark A. Turner, Plaintiff